This is the second time this matter has been before this court. In City of Mobile v. Robertson, 863 So.2d 117 (Ala.Civ.App. 2003) ("Robertson I"), this court set forth, in part, the procedural history and facts of this case as follows:
 "Robertson has been employed with the Mobile Police Department since 1988; he was ranked as a corporal at the time of the incident that gave rise to this action, but he customarily `filled in' as a sergeant approximately two or three nights each week to accommodate the precinct's scheduling requirements. On New Year's Eve, December 31, 2000, random gunfire occurred in parts of the City [of Mobile][`the City'], beginning at 11:30 p.m., becoming heaviest at midnight, and continuing throughout the night. Robertson and Lt. Glen Brannan, the supervising officer at the Fourth Precinct, overheard the gunfire from their posts at the police station. Near midnight, Robertson and Brannan stepped outside the precinct building to listen to the gunshots; based on the sound of the gunfire, they were able to recognize the various types of weapons being discharged. Both Robertson and Brannan retreated under a metal awning to avoid potential injuries from falling projectiles. Because of the number of weapons being discharged and the many locations from which the weapons were being fired, the officers agreed that it would be futile to investigate the gunshots. *Page 1158 
 "Two days later, on January 2, 2001, Robertson, who was off duty and at home, was contacted by Richard Lake, a newspaper reporter; Lake asked Robertson to comment on the New Year's Eve celebration. Robertson agreed to talk to the reporter, but he made it clear to Lake that he was speaking to the press in his capacity as president of the police union. A two-page article entitled `Mobile Police Kept Busy by New Year's Eve Salvo,' was published on January 3, 2001, in which Robertson was quoted as saying:
 "`It was like Beirut out there. We were out there, we took shelter. We went under a steel roof. We could hear weapons fire all around us. Automatic fire, handguns, .22 rifles. You can tell the sound. And I've been shot at before, so I know.'
 "Because of Robertson's published remarks, the City charged him with violating Mobile Police Department General Order Number 54.1, entitled `Public Information'; it also charged him with intentionally violating the Mobile Police Department's Rules of Conduct. Sgt. Christian Dorsey of the internal affairs unit of the Mobile Police Department was assigned to investigate the accuracy of Robertson's statements. After conducting an investigation, Dorsey determined that Robertson's statements to the press were inaccurate because the situation had not been as dangerous as Robertson had described it. In fact, in the Fourth Precinct on that New Year's Eve, no dispatcher had been requested to send an officer to investigate a complaint of gunfire, and no officer had responded to any complaints of gunfire. Maj. Curley Rogers of the Mobile Police Department conducted a hearing on the charges against Robertson, and, after receiving the evidence, Rogers recommended that Robertson be suspended for one day without pay for making a misleading or inaccurate statement to the press. The City adopted Rogers's recommendation.
 "Robertson timely appealed his suspension to the [Mobile County Personnel] Board [`the Board'] for a de novo hearing. On May 22, 2001, a hearing was conducted. At the hearing, Sgt. Dorsey testified that General Order Number 54.1 — the police department's policy regarding disseminating police information to the public — provided that a selected departmental official called a `public-information officer' would monitor all information released to the press. The Board entered a judgment on June 5, 2001, that increased Robertson's suspension from one to three days. The Board found that Robertson had violated General Order Number 54.1 by releasing information to the public without clearing the information through the chief of the Mobile Police Department or the public-information officer. Robertson appealed the Board's judgment to the Mobile Circuit Court."
863 So.2d at 118-20.
On August 30, 2002, the Mobile Circuit Court ("the trial court") entered a judgment reversing the decision of the Mobile County Personnel Board ("the Board") based on constitutional grounds. On appeal, we reversed the judgment of the trial court and remanded the case for the trial court to determine whether the Board's findings were supported by substantial evidence.Robertson I, supra.
On remand, the trial court entered a lengthy judgment in which it reversed the Board's decision suspending Robertson for three days without pay. The trial court referenced several Internet search results, as well as newspaper articles and columns in its judgment; copies of the search results, *Page 1159 
articles, and columns referenced by the trial court were attached as appendices to the judgment. The trial court concluded in its judgment that
 "Robertson was not guilty of misrepresenting/embellishing the facts regarding the New Year's Eve gunfire which occurred throughout the City of Mobile. Further, the Court finds that there is not sufficient evidence that Cpl. Robertson is guilty of any disobedience arising from [the Police Department General Order] 54.1, as he was never charged with anything other than the misrepresentation and embellishment of the facts in his comment to Richard Lake regarding the gunfire on New Year's Eve."
The City and the Board appealed from that judgment.
At the outset, we note that a hearing before the Board is de novo, and, thus, it is the duty of the Board to reach a determination with regard to conflicting testimony. City ofMobile v. Mills, 500 So.2d 20 (Ala.Civ.App. 1986); Averyt v.Doyle, 456 So.2d 1096 (Ala.Civ.App. 1984). The trial court's review of the Board's decision is limited to "the record made before the Board and to questions of law presented, and that court must affirm the judgment of the Board if there is substantial evidence to support its findings." City of Mobile v.Seals, 471 So.2d 431, 433 (Ala.Civ.App. 1985). If there is substantial evidence to support the Board's determination, the trial court must affirm the Board's decision and may not substitute its judgment for that of the Board. Id. The trial court is not permitted to judge the wisdom of the decision of the Board. Creagh v. City of Mobile Police Dep't, 543 So.2d 698
(Ala.Civ.App. 1989). "This court is likewise governed by the same standard as the [trial] court; if we conclude that substantial evidence existed to support the Board's decision, we must uphold it." Creagh, 543 So.2d at 699.
The dispositive issue on appeal is whether substantial evidence supported the Board's decision. We have reviewed the record before the Board and conclude that the decision of the Board is supported by substantial evidence.
The record indicates that, on January 23, 2001, Robertson was charged with violating Mobile Police Department General Order Number 54.1, entitled "Public Information." The charge sheet given to Robertson specifically stated:
 "That Cpl. Robertson, with reckless disregard for the truth, misrepresented and/or embellished the facts concerning the gunfire on New Years Eve during his interview with Richard Lake on January 2, 2001, a reporter for the Mobile Register, the investigation concurrently finds that Cpl. Robertson is in violation of Mobile Police Department General Order number 54.1, Public Information. Furthermore, by intentionally and knowingly violating departmental General Orders, Cpl. Robertson is in violation of the Rules of Conduct, 26.1.5, section 1.17.01, Disobedience of Orders."
A copy of Mobile Police Department General Order Number 54.1 was admitted into evidence at the hearing before the Board. General Order Number 54.1 provides for the dissemination of information to the public regarding matters of public concern. Further, it creates the position of Public Information Officer, a position that includes the responsibility of releasing media information and authorizing press releases, among other things. General Order Number 54.1 also lists the personnel authorized to release information to the media. That list includes the case investigator, the incident commander, the highest ranking officer at the scene, and any member *Page 1160 
of the Mobile Police Department as directed by the Chief of Police.
Testimony elicited at the hearing before the Board revealed that gunfire on New Year's Eve was typical in Mobile. On New Year's Eve, December 31, 2000, Robertson and Brannan stood outside the Fourth Precinct office at approximately 11:30 p.m. to listen for gunfire. While standing outside, Robertson and Brannan heard distant gunfire; they did not see any shots being fired. Brannan characterized the gunfire as sporadic and did not consider the gunfire a danger. Robertson testified that the gunfire increased at midnight. Robertson opined that some of the shots fired were from automatic weapons. Brannan testified that he could not identify automatic-weapon fire from the shots heard that evening. According to Brannan, the gunfire heard was no greater than the gunfire typically heard on New Year's Eve.
At some point during the gunfire, Robertson and Brannan stepped under a metal awning outside of the police precinct office to avoid potential injury from falling projectiles. Neither Robertson nor Brannan investigated the gunfire or called the dispatcher to send other police officers to investigate the gunfire; an incident report was not prepared to document the gunfire.
Robertson testified that he believed that the gunfire on the evening of December 31, 2000, was worse than in years past. Robertson identified several different types of gunfire and analogized the gunfire to Beirut. Robertson testified that he had never been to Beirut but that he had seen celebratory gunfire on televised news reports. Robertson testified that he made the statement to the newspaper reporter in his capacity as president of the police union and not in his capacity as a police officer. Robertson noted that he was not on duty when he made the statement, but he recognized that he was a police officer 24 hours a day. According to Robertson, he felt his comments were a matter of public concern regarding the safety of the public and the shortage of police manpower. We note that the officer who conducted the police department's pre-disciplinary hearing stated that merely standing outside the precinct office listening to gunfire was incompatible with Robertson's statement to the media that it was like Beirut and he had to take shelter.
In its June 5, 2001, decision, the Board concluded, in pertinent part, as follows:
 "[Robertson] violated Police Department General Order 54.1 in that he gave out public information without clearing it through the Chief of Police or the public information officer, yet he had no permission to release or issue any press release. He clearly understood that inquiries for information should be directed to the public information officer. Furthermore, he was aware that the Chief or his designee is responsible for authorizing all press releases and media contacts. Cpl. Robertson was serving as a police officer and was on duty when the gunfire took place. It is true he was not on duty when he was interviewed by the reporter. However, a police officer is considered a police officer 24 hours a day and must conduct [himself] in that manner. The rules and regulations of the Police Department apply to an officer whether he is on duty or off duty.
 "This Board believes and finds, therefore, that this officer intentionally violated the rules and regulations of the police department. . . . His remarks to the news media concerning gunfire . . . clearly violated the police department General Order No. 54.1."
Our review of the evidence, as well as the trial court's review of the evidence, is limited to a determination of whether substantial *Page 1161 
evidence existed to support the decision of the Board. See Cityof Mobile v. Seals, supra. Given the evidence presented to the Board, we find that there was substantial evidence to support the Board's decision suspending Robertson for three days for violating General Order Number 54.1. Because substantial evidence existed to support the decision of the Board, we cannot substitute our judgment for that of the Board, and we must therefore uphold its decision. Therefore, we have no alternative but to reverse the judgment of the trial court. See Creagh, supra. The cause is remanded with instructions to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and PITTMAN, J., concur.
CRAWLEY and MURDOCK, JJ., dissent, without writing.