PITTMAN, Judge.
 

 The City of Dothan (“the City”) appeals from a judgment of the Houston Circuit Court that reversed a decision of the City of Dothan Personnel Board (“the Board”) upholding the termination of Earl R. McCleskey as a municipal employee.
 

 
 *1107
 
 It is undisputed that the Civil Service Act of Dothan, Act No. 92-442, Ala. Acts 1992 (hereinafter “the Civil Service Act”), governs the procedures for the termination of employees within the City’s classified-service system. It is also undisputed that McCleskey’s employment was terminated by his department head, Billy Mayes. Pursuant to the applicable provisions of the Civil Service Act, a department head may discharge an employee in the classified service, but the employee may appeal from that decision to the Board. McCles-key appealed from the termination of his employment to the Board, which conducted a hearing at which it received evidence and later entered an order affirming the decision to terminate McCleskey’s employment. Pursuant to another provision of the Civil Service Act, McCleskey appealed the Board’s decision to the local circuit court. Following the circuit court’s reversal of the Board’s decision, the City perfected the instant appeal.
 

 McCleskey has filed a motion to dismiss the City’s appeal; relying on his interpretation of the Civil Service Act, he asserts that the City does not have standing to appeal the circuit court’s decision. Because the issue of standing is jurisdictional, we must first address the issue whether the City has standing to bring the appeal in this matter. This court has previously addressed standing in regard to the exact same Board and municipality in
 
 City of Dothan Personnel Board v. DeVane,
 
 860 So.2d 881 (Ala.Civ.App.2002). The procedural posture in the two cases is essentially identical. After the Board upheld the City’s termination of DeVane’s employment, he appealed to the Houston Circuit Court and obtained a reversal. However, when
 
 the Board
 
 attempted to appeal from the circuit court’s decision, this court concluded that
 
 the City
 
 was the real party in interest and dismissed the appeal. 860 So.2d at 887. Although McCleskey named both the City and the Board as defendants in his petition for judicial review from the Board’s decision, the record is clear that the City, not the Board, has taken the instant appeal. Based upon this court’s decision in
 
 De-Vane,
 
 McCleskey’s assertion that the City cannot properly appeal from an adverse decision of the circuit court is without merit, and his motion to dismiss the appeal is due to be denied.
 

 “[Appellate] review of cases like this one is limited [and] .... is the same as that of the circuit court.... The decision of an administrative agency will be affirmed unless the appellant can prove that the agency acted in an arbitrary and capricious manner or failed to comply with the applicable law.
 
 [Ex parte Personnel Bd. for Mobile County,
 
 637 So.2d 888, 889 (Ala.1994) ]. The Board’s decision ‘must be affirmed if there is substantial evidence to support the [Board’s] findings.’
 
 Id.”
 

 Ex parte City of Dothan Pers. Bd.,
 
 791 So.2d 353, 356 (Ala.2000).
 

 In order to determine whether the circuit court properly reversed the Board’s decision, we must also remember that our “review [of the Board’s decision] is limited to the record made before the Board and to questions of law presented.”
 
 City of Mobile v. Seals,
 
 471 So.2d 431, 433 (Ala.Civ.App.1985). If there is substantial evidence to support the Board’s determination, the Board’s decision should be affirmed, and a reviewing court may not properly substitute its judgment for that of the Board. Substantial evidence is “relevant evidence ... that might be accepted by reasonable minds as adequate to support a conclusion.”
 
 City of Mobile v. Trott,
 
 596 So.2d 921, 922 (Ala.Civ.App.1991). In the administrative-law context, substantial evidence exists if there is “ ‘a
 
 *1108
 
 rational basis for the conclusions approved by the administrative body.’ ”
 
 Seals,
 
 471 So.2d at 434 (quoting
 
 Ex parte Morris,
 
 263 Ala. 664, 668, 83 So.2d 717, 720 (1955)). In no event are reviewing courts permitted to judge the wisdom of the decision of the Board.
 
 City of Mobile v. Robertson,
 
 897 So.2d 1156, 1159 (Ala.Civ.App.2004) (citing
 
 Creagh v. City of Mobile Police Dep’t,
 
 543 So.2d 698 (Ala.Civ.App.1989)). Thus, if the Board properly applied the law and there was substantial evidence to support its decision, that decision is to be affirmed on judicial review.
 
 City of Dothan Pers. Bd. v. Herring,
 
 612 So.2d 1231, 1232-33 (Ala.Civ.App.1992).
 

 The evidence presented to the Board tended to show the following pertinent facts. McCleskey had been employed by the City’s utilities department since 1977; by June 2006, McCleskey was serving as the City’s wastewater-collection supervisor. He was responsible for supervising 17 employees and was himself supervised directly by the City’s utilities manager, Billy Mayes.
 

 On July 11, 2006, pursuant to department policy, McCleskey submitted a travel-expense request to Mayes in advance for a training class he planned to attend with two of his subordinates on July 20-21, 2006. The amount McCleskey requested for that out-of-town trip included sums for one night’s lodging, two days’ meals, and fuel for the trip for the three employees; his request in the amount of $335.60 was approved. McCleskey testified that he had received the money before leaving on the two-day trip and that he had paid the expenses and kept up with the receipts for the expenses incurred by the three men. McCleskey testified that, upon their return to Dothan after the class, which had occurred around 6 p.m., the men had agreed to stop at a restaurant to eat supper before going home. Stopping at a restaurant that served chicken, McCleskey suggested to his subordinates that, because they had not spent any money for food that day, each of them could spend up to $25 on their meal; McCleskey also suggested that they “get the best deal for their money.” Thereafter, each man ordered a carry-out meal consisting of 12 pieces of chicken, 3 large side dishes, and 6 biscuits. The receipt from the restaurant indicated that the total cost of those three meals was $74.49.
 

 Pursuant to departmental policy, following the completion of any travel on City business, employees are to submit receipts indicating actual travel expenses incurred, such as for gasoline, hotels, meals, and telephone service; those expenses must be submitted and certified by the employee to his department head. Upon his return to the office, McCleskey submitted to the City’s accounting department receipts from the trip (including the carry-out meal purchase) with his report. After that department returned the expense report to McCleskey’s supervisor for his signature, Mayes advised McCleskey that he believed the $74.49 was used to purchase an unreasonable amount of food for 3 people; he returned the expense report to McCleskey and stated that he would only authorize the expense of 1 12-piece meal for the 3 men, or a total amount of $24.83. Mayes reminded McCleskey that departmental policy required that all expenses paid by the City were to be those of the pertinent employees themselves and that only normal meal expenses were allowed. Mayes concluded by noting that the City’s expense policy specifically stated that “[a]ny employee who willfully claims fraudulent travel expenses shall be subject to legal prosecution and termination.”
 

 McCleskey maintained that the total meal expense was proper, refused to change the expense report, and insisted
 
 *1109
 
 that Mayes approve the report as submitted. Mayes responded by telling McCles-key that the meal expense was excessive and told McCleskey to correct the report. McCleskey again refused to change the report and told Mayes that he would file a grievance if Mayes did not approve the expense report. Mayes again refused to authorize the expenses, and McCleskey filed a grievance concerning the matter on July 26, 2006.
 

 Mayes testified that he had not made a decision whether to take disciplinary action until after he had interviewed the other two employees who had accompanied McCleskey to the class. However, Mayes stated that, during those interviews, he had learned for the first time that all three men had taken the meals home to share with their families. According to Mayes, McCleskey’s subordinates had volunteered to reimburse the City after learning that City policy allowed travel expenses for City employees only and that Mayes would not approve such an expenditure.
 

 On or about August 3, 2006, Billy Mayes served on McCleskey a “Notice of Determination Hearing and Possible Disciplinary Action.” In that document, McCles-key was charged with violating City rules and policies as follows:
 

 “3.41(11) Improper us of, or failure to exercise, supervisory authority and responsibility;
 

 “3.42(11) Irresponsible use of City’s credit, purchasing authority;
 

 “3.42(19) Other. ‘Influencing the employees under your supervision to be involved with the purchase of a meal that was unreasonable and excessive and stating that it was acceptable to spend the City’s funds in such a way.’
 

 “3.43(5) Deliberate falsification of records and/or personal misrepresentation of statements given to supervisor, officers, the public or boards;
 

 “3.43(19) Other. Fraudulent submission of expense receipts per City of Dothan Standard Operating Guideline No. 2, Fraudulent Claim B. ‘[McCleskey] submitted an expense claim for a meal 1) that a reasonable person would find excessive (a 12 piece chicken dinner with 3 large sides & 6 biscuits) for one person to consume for one meal, 2) that was purchased upon arrival back in Dothan, 3) that was purchased as a carry-out and not [to] eat at the restaurant but to be taken home.’ ”
 

 Although the first three charges had various disciplinary measures associated with them, the two final charges were classified by the rules and policies as an “intolerable offense” and were punishable by termination of employment. An internal “predetermination” hearing was conducted on August 7, 2006. Three days later, Mayes issued his decision that McCleskey had been guilty of all charges stated in the notice, and he terminated McCleskey’s employment as of that date.
 

 On August 15, 2006, McCleskey filed his notice of appeal to the Board. On October 26, 2006, the Board conducted a hearing. At that hearing, McCleskey and Mayes testified; in addition, numerous exhibits were admitted into evidence, including McCleskey’s entire personnel record. Mayes informed the Board that the only reason McCleskey’s employment had been terminated was because he had certified as reimbursable a travel-expense request for the cost of food that had been taken home to be consumed by his family, an action that violated the City’s Standard Operating Guideline No. 2 concerning fraudulent-reimbursement claims. Following the Board’s hearing, but before the Board issued its decision, McCleskey filed paperwork to retire effective January 1, 2007. On January 8, 2007, the Board affirmed Mayes’s decision to terminate McCleskey’s
 
 *1110
 
 employment. Two days later, McCleskey filed a notice of appeal to the Houston Circuit Court. As noted previously, the circuit court entered a judgment that reversed the Board’s decision. That judgment ordered
 
 the Board
 
 to reinstate McCleskey; subsequently, the Board filed a motion as a nonparty to modify the judgment, and the City filed a motion to stay the judgment. On October 16, 2007, the circuit court granted the Board’s motion and amended its judgment so as to direct
 
 the City
 
 to reinstate McCleskey and to refund his backpay and benefits.
 

 As discussed previously, this court’s limited review of the Board’s and the circuit court’s decisions is based solely upon “the record made before the Board and to questions of law presented [there].”
 
 City of Mobile v. Seals,
 
 471 So.2d at 433;
 
 see also Ex parte City of Dothan Pers. Bd.,
 
 791 So.2d at 356. “ ‘This court is likewise governed by the same standard as the [circuit] court; if we conclude that substantial evidence existed to support the Board’s decision, we must uphold it.’ ”
 
 City of Mobile v. Robertson,
 
 897 So.2d at 1159 (quoting
 
 Creagh v. City of Mobile Police Dep’t,
 
 543 So.2d at 699). Based upon our review of the evidence summarized previously that was presented to the Board during the hearing of McCleskey’s appeal to that body, we conclude that the Board had before it substantial evidence indicating that McCleskey had committed an “intolerable offense.” Thus, Mayes’s termination of McCleskey’s employment was properly affirmed by the Board. Because we have concluded that the Board’s ruling was proper, we must also conclude that the circuit court improperly reversed the decision of the Board. Therefore, that judgment reversing the Board’s decision is hereby reversed, and the cause is remanded with instructions to the circuit court to enter a judgment affirming the Board’s decision.
 

 MOTION TO DISMISS DENIED; REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.